UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CORY LEE LUSKA,

        Plaintiff,

v.                                                       Case No. 17-C-378

DR. SALAM SYED, et al.,

        Defendants.

## DECISION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Cory Lee Luska, who is representing himself, filed this action under 42 U.S.C. § 1983, alleging that defendants Dr. Salam Syed, Jamie Gohde, Marci Peloquin, and Jonathan Bussie were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Currently before the court is the defendants' motion for summary judgment. For the following reasons, the defendants' motion will be granted and the case will be dismissed.

## BACKGROUND[1]

At all times relevant to this action, Luska was housed at Columbia Correctional Institution. On January 15, 2017, Luska sought medical care for spider bites or a possible infection on his buttocks. A Health Services Unit (HSU) nurse saw Luska for these concerns on January 19, 2017. At that appointment, the nurse ordered a culture of Luska's right buttock to check for infection. She also scheduled Luska for a follow-up appointment with a nurse practitioner, gave him a course of

---

[1] Luska did not respond to all of the defendants' proposed findings of fact, ECF No. 29, so those facts are deemed admitted for the purposes of summary judgment. *See* Civil L.R. 56(b)(4).

antibiotics and Ibuprofen, and advised him to use ice for pain management. This is the standard practice for treating a methicillin-resistant staphylococcus aureus (MRSA) infection. Luska presented for the follow-up appointment on January 23, 2017. The nurse noted his wound was red and warm, but there was no draining present. The following day, an HSU nurse learned that Luska's culture tested positive for MRSA. But because Luska was already being treated for MRSA, no further intervention or treatment was required on January 24, 2017. Luska returned to HSU for an appointment on January 30, 2017. His wound had healed, and he denied any complaints.

Luska saw Dr. Syed on February 17, 2017, complaining of an infection on his right leg. Because his previous wound had tested positive for MRSA, Dr. Syed treated this wound as a MRSA infection, according to standard practice. That is, he placed Luska on a course of antibiotics, drained and cleaned the wound, and ordered frequent evaluations in HSU for dressing changes and wound care. Luska received Bactrim to treat the wound on his buttocks and Clindamycin for the wound on his leg. Both antibiotics are used to treat MRSA. Dr. Syed reassessed Luska's infection during his wound care appointments on February 20, 21, 22, 23, and 27. The infection on Luska's buttocks responded well to the 10-day course of antibiotics and did not form an abscess that required incision and drainage. The wound on his leg, however, developed an abscess which required incision and drainage. As a result, this infection required a longer course of antibiotic treatment.

On February 9, 2017, Luska rolled his ankle playing basketball. That same day, a nurse evaluated the ankle and ordered an x-ray as well as ice, Ibuprofen, acetaminophen, an Ace bandage, and crutches. Dr. Syed also assessed Luska's ankle injury on February 9th and diagnosed Luska with a common ankle sprain. The x-ray did not reveal evidence of a fracture or dislocation. There is no evidence that Luska was prescribed a walking boot.

Between February 9, 2017 and February 13, 2017, Luska was placed on the "will call" pass list to see HSU. Each housing unit has a list of individuals who have will call passes for the day. The appointments for these individuals vary in time and are set by HSU. Emergency situations must take precedent over the non-urgent appointments scheduled for will call that day. Although security staff have no control over the will call lists and the priority of inmate complaints, staff are required to ensure inmates are ready when HSU calls them for their appointments. On February 13, 2017, Peloquin reported to Bussie that Luska approached her in the security bubble and yelled that he should receive an immediate HSU appointment, rather than wait on the will call list. During rounds, Bussie and Captain Schultz spoke with Luska about his ankle concerns and observed that Luska's ankle was swollen and bruised. Bussie then contacted HSU to determine the results of Luska's x-ray. HSU informed Bussie that Luska's foot was not broken. Based on his observations and HSU's input, it was determined that Luska did not present with an emergency medical situation, and he remained on the will call list for the next available HSU appointment.

Later in the day on February 13, 2017, staff informed Bussie that Luska was again acting out against staff. The on-duty lieutenant placed Luska in Temporary Lock-Up (TLU) status because Luska did not follow directives to return to his bunk and cooperate with officers. Luska was not permitted to keep his crutches while in TLU. Neither Bussie or Peloquin were involved in placing Luska into TLU status. On February 23, 2017, Bussie completed a conduct report that charged Luska with violating Wis. Admin. Code §§ DOC 303.33 "Disruptive Conduct" and DOC 303.28 "Disobeying Orders." Luska received 90 days in disciplinary separation for this conduct report, beginning February 24, 2017.

3

Luska did not submit a Health Services Request (HSR) about his ankle until March 7, 2017. A nurse responded to the request the following day, and advised Luska he could discuss any concerns he had about his ankle at his upcoming doctor's appointment scheduled for that week. Luska presented for an appointment with Dr. Syed on March 8, 2017 to address his Hepatitis C. Luska did not complain about ankle pain or injury at that appointment.

Luska submitted HSRs with complaints of ankle pain on March 27, April 5, and April 11. A nurse practitioner saw Luska regarding his concerns on April 17, 2017. The nurse practitioner noted a moderate amount of swelling in the ankle and discussed treatment options with Luska. That same day, Luska was scheduled to see an advanced care provider. Luska reported to APNP Lacey Curtis that he experienced pain when he climbs, jumps, or puts all of his weight on his ankle. She prescribed physical therapy, an Ace bandage, ice, and a low bunk restriction. She also ordered Luska to follow up with HSU as needed or if his physical therapy was unsuccessful. One month after his appointment with APNP Curtis, Luska transferred from Columbia to John C. Burke Correctional. During his admissions health assessment, Luska reported no medical concerns.

As HSU manager, Nurse Gohde provides overall administrative support and general supervision for HSU. Although Gohde occasionally responds to HSRs, she did not respond to any of the fifteen HSRs Luska submitted between January 15, 2017 and April 30, 2017.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for

4

summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "[A] factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[A] 'metaphysical doubt' regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and 'the nonmovant fails to demonstrate a genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted).

## ANALYSIS

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An inmate's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2)

5

an official's deliberate indifference to that condition." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). The defendants do not dispute that Luska has an objectively serious medical condition. Therefore, Luska must demonstrate that the defendants were deliberately indifferent to his medical needs.

Deliberate indifference requires more than negligence or even gross negligence. It requires that the defendants knew of, yet disregarded, an excessive risk to Luska's health or safety. *Farmer*, 511 U.S. at 835; *see also Estelle*, 429 U.S. at 104–05. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "A state officer is deliberately indifferent when he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted).

Luska asserts Dr. Syed was deliberately indifferent in treating his infection and sprained ankle and challenges the speed in which he received treatment. Yet, Dr. Syed and the medical staff met with and provided treatment for Luska on multiple occasions from January through April 2017. Four days after Luska complained of possible infection on his buttocks, HSU staff began treating the infection consistent with the practice for treating MRSA. HSU staff learned his culture tested positive for MRSA on January 24, 2017, but no additional treatment was required. Luska's infection had healed by January 30, 2017. When Luska complained of an infection on his right leg, Dr. Syed began treating the wound as a MRSA infection on February 17, 2017. He placed Luska on a course of antibiotics, drained and cleaned the wound, and ordered frequent HSU evaluations for dressing changes and wound care. Dr. Syed personally reassessed Luska's infection five times between February 20 and February 27, 2017.

6

As to his ankle injury, HSU staff evaluated Luska's ankle on February 9, 2017, the same day it was injured. The nurse ordered an x-ray, ice, Ibuprofen, acetaminophen, an Ace bandage, and crutches. Dr. Syed diagnosed Luska's injury as a common ankle sprain, as the x-ray did not reveal evidence of a fracture or dislocation. Luska did not complain about ankle pain again until March 7, 2017. The following day, Dr. Syed saw Luska for chronic Hepatitis C care. At that appointment, Luska did not complain about ankle pain or injury. When Luska complained about his ankle on March 27, April 5, and April 11, HSU scheduled an appointment for him with a nurse practitioner on April 17, 2017. After the nurse noted a moderate amount of swelling in Luska's ankle, she sent Luska to the advanced care provider. APNP Curtis subsequently prescribed physical therapy, an Ace bandage, ice, and a low bunk restriction and directed Luska to follow up with HSU as needed.

Indeed, Luska received frequent and proper medical care. Dr. Syed's responses to his concerns were appropriate given the nature of his complaints and the level of ongoing care he received. No reasonable jury could conclude that any delay in resolving Luska's concerns were caused by Dr. Syed's deliberate indifference. Though Luska may disagree with the type of treatment he received and the rate at which he received it, mere disagreement with the medical staff's chosen course of medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Luska has not demonstrated that Dr. Syed's treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision" on his medical judgment. *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (citation omitted). In short, Luska has failed to establish that Dr. Syed was deliberately indifferent to his medical needs.

As to Nurse Gohde, Luska has not established that she was personally involved in the claimed deprivations. A defendant may be personally liable only "if the conduct causing the constitutional deprivation occurs at [her] discretion or with [her] knowledge and consent. That is, [she] must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Luska offers no evidence that Gohde was involved in responding or processing the HSU requests related to his infection or ankle pain. Absent any involvement by Nurse Gohde, she cannot be held liable under § 1983. Because Luska has failed to demonstrate that he has evidence of either involvement or knowledge on the part of Nurse Gohde, his claims against her will be dismissed.

Luska further asserts Bussie and Peloquin were deliberately indifferent to his medical needs by ignoring his requests for treatment. But Luska has not established that these officers were deliberately indifferent, as their conduct was not "'something approaching total unconcern'" for his welfare. *Rosario v. Brawn*, 670 F.3d 816, 822 (7th Cir. 2012). Once Peloquin became aware of Luska's ankle complaints, she reported Luska's concerns to Bussie, her supervisor. Bussie subsequently investigated Luska's complaint, noticed his ankle was bruised and swollen, and called HSU to determine the result of Luska's x-ray. HSU advised Bussie that Luska's foot was not broken. As a result, Luska remained on the will call list to wait for the next available HSU appointment. Because Bussie is not a medical professional, it was acceptable for him to defer to the recommendations of medical staff in concluding that Luska's complaints did not constitute a medical emergency. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (holding that non-medical defendants may rely on the expertise of medical personnel). In addition, to the extent Luska asserts

8

Bussie and Peloquin delayed his access to treatment, Luska has not presented any medical evidence that any delay between his complaints of pain and further treatment detrimentally affected, unnecessarily prolonged, or exacerbated his pain. *See Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) ("In cases were prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) cause some degree of harm."). The record reflects that Luska did not file another HSR about his ankle until March 7, 2017. Luska has not shown sufficiently probative evidence that Peloquin and Bussie were deliberately indifferent to his serious medical needs.

Finally, to the extent Luska claims Peloquin and Bussie denied him crutches after he was placed in TLU, it is undisputed that Peloquin and Bussie were not involved in the decision to send Luska to TLU or to take away his crutches. As a result, Luska has not established that these defendants were deliberately indifferent to his medical needs, and his claims against them will be dismissed.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (ECF No. 27) is **GRANTED**. The Clerk is directed to enter judgment dismissing the case with prejudice.

**SO ORDERED** this  29th  day of March, 2018.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court